IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CONSTANTINO KOJIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-04-0694 |
| § | |
| BARTON PROTECTIVE SERVICES, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Plaintiff, Constantino Kojin, sued his former employer, Barton Protective Services, on February 24, 2004, alleging discrimination on the basis of age and national origin and asserting a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. This court previously granted Barton's motion for summary judgment on the age discrimination and hostile work environment claims. (Docket Entry No. 19). Barton has now moved for summary judgment as to Kojin's national origin claim. (Docket Entry No. 21). Kojin has responded; Barton has replied. (Docket Entry Nos. 30, 31). Based on a careful review of the pleadings, the motion, response, and reply, the summary judgment evidence, and applicable law, this court grants Barton's motion for summary judgment, for the reasons set out in detail below. Final judgment is entered by separate order.

**I.      Background**

Additional background information regarding Kojin's suit can be found in this court's previous memorandum and opinion.  (Docket Entry No. 19).  Briefly, in May 2002, John Kobe, Barton's Human Resources Manager, interviewed and hired Kojin, a 68 year-old Brazilian citizen of Russian descent.  Kojin began working as a security guard for Barton in July 2002 at the 1401 Enclave Parkway office building.  His duties included protecting clients' property and the safety of employees and others.  (Docket Entry No. 21, Ex. 8).  In October 2002, Kojin's direct supervisor, Drew Paulson, conducted a periodic review of Kojin's performance and rated his performance "outstanding" in all categories.  (Docket Entry No. 21, Ex. C).  Paulson noted that Kojin's performance far exceeded Barton's trust and commitment standards because he always arrived at work early, left a complete record of his shift for managerial review, and was very helpful toward building tenants.  (*Id.*).

On March 18, 2003, Traci Kerr, an employee of Parker Drilling Company, a tenant at 1401 Enclave, complained to Paulson that Kojin was "snooping around" Parker Drilling's confidential files.  (Docket Entry No. 21, Ex. D, (Kobe Aff.)).  Kerr reported that Kojin had inquired about a Caspian Sea drilling project that he could only have known about if he had seen Parker Drilling's confidential files.  (Docket Entry No. 21, Ex. F, (Paulson Memo).  Kerr's letter setting out the complaint stated:

> As I was walking into the building via the parking garage, the security guard confronted me by standing right in my way.  He then said he wanted to talk with me.  We walked into the building and every time I tried to put some physical distance between us, he would step closer to my side again.  To be honest it really bothered me and I wanted to get away from him but then his

> conversation attracted my attention as he asked a question about drilling that I knew he only knew of by looking at something in my bosses office [sic] (Vice President of Corporate Business Development) or in our engineering department. So I continued by asking him where he saw this information. Since I could not place it by his response I asked him to come up with me and show me exactly where he saw this information.
>
> At this time I was worried because there is NO reason he should have been snooping around in my boss's office or anywhere in our company for that matter.
>
> It ended up that he had not found that information in my boss's office (even though the document he identified was a copy of what was in my boss's office). He took me to a cubicle right outside the Vice President of Engineering' [sic] office and showed me a document he had picked up and gone through. It was sitting in the middle of several piles and was in the cubicle[,] not out on a table in our lobby or any general areas. There was NO reason he should have been in the cubicle let alone going thru [sic] documents on the desk.
>
> I then told him I would have to ask someone for the answer to his question. I then talked with Drew Paulson later in the day when I saw him downstairs and told him about the incident. I said we were not happy that someone who is supposed to be patrolling the building is going thru [sic] company paperwork on someone's desk and then coming to us and asking questions relating to that document that he would not have known had he not been going through our paperwork.

(Kobe Aff., Ex. A, (Kerr Letter)). In his deposition, Kojin admitted that he saw a file titled "'Caspian Sea Drills' or something like that," but claimed that the file was left in plain view and that he had no other knowledge of the project. (Docket Entry No. 21, Ex. A, (Kojin Dep.) at 60–61). Paulson instructed Kojin not to report to work that evening and informed him that he would no longer be working at the Enclave Parkway location. (Kojin Dep. at 64). On March 18, 2003, Paulson completed a "Disciplinary Action Form" stating that "Mr. Kojin was caught going through a tenant's classified documents, intimidating tenants, and

watching televisions" while on duty. (Docket Entry No. 21, Ex. E). Paulson directed Kojin to meet with Kobe the next day.

At the meeting, Kobe terminated Kojin's employment. In his affidavit, Kobe stated "that Mr. Kojin had violated company policy by (1) conducting himself in an unprofessional manner, (2) obtaining unauthorized access to a client's confidential information and (3) watching television while on duty." (Kobe Aff.). Kerr's complaint, which she reduced to writing on August 21, 2003,[1] corroborates the allegations of intimidation and going through documents in Kobe's Disciplinary Action Form. (Kobe Aff., Ex. A (Kerr Complaint)). In his deposition, Kojin admitted to watching television on one occasion, in order to watch news regarding the Washington, D.C.-area sniper. (Kojin Dep. at 79).

According to Kojin, Parker Drilling sought to have him fired because it believed Kojin had engaged in corporate espionage. Kojin alleged that Parker Drilling viewed him as a threat to Parker Drilling's Russian oil contracts, and that this led to Barton's decision to terminate his employment. (Docket Entry No. 1, at 3; Kojin Dep. at 94–99). Kojin specifically believes that his fluency in Russian was construed as a threat to Parker Drilling's security and confidential transactions in Russia. (*Id.* at 95–100). In his EEOC charge, Kojin acknowledged that Barton's stated reason for dismissing him was "spying." (Docket Entry No. 10, Ex. A). Kojin stated he was "'invited to resign because [he] would have been

---

[1] Kerr did not memorialize her complaint until five months after she complained verbally to Paulson. By this time, Kojin had begun administrative proceedings through the EEOC.

'spying' in Parker Drilling Co. offices something secret, confidential?!!!" (*Id.*) (emphasis in original). Kojin alleges that he was fired because of his national origin.[2]

## II.     The Applicable Legal Standards

### A.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See*

---

[2] In the Charge of Discrimination form Kojin filled out on the same day and which the EEOC sent to Barton, Kojin stated that "I believe I have been discriminated against based on my national origin, Brazilian, which is in violation of Title VII of the Civil Rights Act of 1964, as amended." (Docket Entry No. 10, Ex. C). In this suit, he appears to focus on his Russian ancestry.

*Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000).  The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id*.  The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

### B. The Title VII Standard

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000).

"A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail on summary judgment, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). "However, because direct evidence of discrimination is rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Id.*; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

When a Title VII claim relies only on circumstantial evidence of discrimination, the plaintiff's ability to withstand a motion for summary judgment is determined by a three-part burden-shifting scheme with the plaintiff having the initial burden of establishing a *prima facie* case of discrimination. *See Reeves v. Sanderson Plumbing Co.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Price v. Fed. Express Corp.*, 283 F.3d 715, 719–20 (5th Cir. 2002). A *prima facie* case of race or national origin discrimination is established once the plaintiff has proved that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was treated less favorably than others similarly situated. *See McDonnell Douglas*, 411 U.S. at 802; *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). In a work-rule violation case, a plaintiff may establish a *prima facie* case by showing "either that he did not violate the rule or that, if he did, [others outside the protected class] who engaged in similar acts were not punished similarly." *Mayberry v.*

*Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory justification" for the adverse employment decision. *See Price*, 283 F.3d at 720. If a defendant produces such evidence, then the "Modified *McDonnell Douglas* approach" governs the scheme's final step. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (interpreting *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). There, the plaintiff must offer evidence that creates a genuine issue of material fact either that (1) the defendant's purported reason is false (indicating that it is a pretext), or that (2) although true, the defendant's justification is only one of the grounds for its conduct and that another "motivating factor" is the plaintiff's protected characteristic (indicating that the decision was made based on a "mixed motive"). *Id.* If the plaintiff offers evidence of a "mixed motive," the defendant would then have the burden to offer evidence that the same employment decision would have been made regardless of the impermissible motivating factor; "[i]f the [defendant] does not carry this burden, plaintiff prevails." *Id.* quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995).

When the challenged adverse employment decision is termination because of a complaint of poor performance, "the validity of the initial complaint is not the central issue because the ultimate falseness of the complaint proves nothing as to the employer; only as to the [complainant]." *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993). The inquiry is restricted to whether the employer believed and acted on the complaint in good

faith or merely used it as a pretext for an otherwise discriminatory dismissal. *Id.* Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory justification for dismissal; the validity of an employer's good faith belief is irrelevant. *Mayberry*, 55 F.3d at 1091; *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

## III.   Analysis

### A.   The Title VII Claim

The parties do not dispute that (1) Kojin is a member of a protected class; (2) that he was qualified for his position as a security guard; or (3) that he was terminated from his employment. Kojin unsuccessfully attempts to establish discrimination by arguing that under Barton's policy, his alleged rule violations should have resulted in a suspension or other less severe sanction, not immediate termination. Kojin does not identify any other employees outside the protected class who were similarly situated but who received dissimilar punishments. Kojin cites portions of the "Barton Team Handbook." The "Team Handbook," which Kojin acknowledges he received, authorizes the sanction Kojin received. The handbook states: "[t]ermination will also occur when there is a serious performance infraction." (Kojin Dep. at 152–155; (Docket Entry No. 21, Ex. 21, (Team Handbook) at 28)). The handbook lists several acts that constitute such an infraction. (*Id.*). Kerr's complaint about Kojin is fairly construed as included in those that the handbook lists as warranting immediate termination. "Dishonesty" and "[h]arassment . . . regardless of circumstances or type" are both specifically listed as grounds sufficiently serious to result

in termination. (Team Handbook at 28). Even if Kojin were correct that the handbook does not include his violations in its list of offenses resulting in immediate termination,[3] no inference of discrimination results because the handbook explicitly states that the offenses resulting in termination are not limited to those listed. The handbook states that suspension *may* occur "for a serious performance-related action or in order to properly investigate an allegation of serious misconduct," but there is no indication in the record that suspension *must* occur prior to termination. Because Kojin neither pleads nor points to facts supporting the fourth element of a *prima facie* Title VII discrimination case, he is unable to withstand Barton's motion for summary judgment. *See* FED. R. CIV. P. 56; *Prejean*, 227 F.3d at 508.[4]

Even assuming that Kojin could make a *prima facie* showing, Barton satisfies its subsequent burden by proffering a legitimate, nondiscriminatory basis for Kojin's dismissal: Kerr's complaint. Kojin points out that the complaint was not reduced to writing until several months after his termination, but he does not dispute that Kerr verbally complained about him in March 2003. Although Kojin disputes any basis for Parker Drilling's concern that he posed a threat to the confidentiality of information about its Russian deals, the ultimate validity of Kerr's complaint does not determine whether it served as a legitimate basis for Barton's decision to fire Kojin. *See Waggoner*, 987 F.2d at 1165 (explaining that

---

[3] Indeed, several other, less serious, violations warrant immediate termination, including sleeping during a shift and showing up late. (Team Handbook at 28).

[4] Kojin misinterprets *Desert Palace* as replacing the established burden-shifting analysis as the standard of law applicable to his claim. *Desert Palace* does not change the first two stages of inquiry, but only affects the third step of analysis. *Rachid*, 376 F.3d at 312. The final step's focus is expanded beyond pretext to include a mixed-motive analysis. *Id.*

in a discrimination case based on job termination after another employee alleged sexual harassment, the accused employee's guilt or innocence was irrelevant and the only issues were whether the employer had a good-faith belief in the complaint and whether the employee was terminated because of the complaint).

Kojin has not raised a fact issue as to whether Kerr's complaint was a pretext for discriminatory dismissal or that the dismissal was also based on the "motivating factor" of national origin. *See Rachid*, 376 F.3d at 312. Kojin offers no evidence of national origin serving as the basis for his termination, either by itself or with Barton's asserted justification. The only disciplinary event invoked by either party as a basis for Barton's decision is Kerr's complaint.[5] Kojin points to no evidence in the summary judgment record that Barton used Parker Drilling's complaint as a pretext to fire him because of national origin discrimination. Subjective beliefs are not competent summary judgment evidence. *See Republic Ref. Co.*, 924 F.2d at 96. A court "may not disregard the employer's explanation without countervailing evidence that it was not the real reason for the discharge." *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443 (5th Cir. 1995). The allegations contained in Kojin's complaint and his denials of Barton's stated justifications are insufficient to preclude summary judgment.[6] *See* FED. R. CIV. P. 56.

---

[5] Kojin correctly states that *Desert Palace* confirmed that circumstantial evidence of a motivating factor is sufficient for a plaintiff to carry its burden. 539 U.S. at 99–101. However, Kojin fails to present either direct or circumstantial evidence that unlawful discrimination motivated Barton's decision to fire Kojin.

[6] The facts related to Kojin's prior positive performance review are insufficient to prove pretext. The evaluation concerns Kojin's performance before October 31, 2002; Kerr complained about Kojin's conduct on a single day in March 2003. This court cannot weigh whether Barton should rely more heavily

The same-actor inference of nondiscrimination provides additional support for the grant of summary judgment. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (expressing approval of the "same actor" inference); *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (explaining that where the person who fired a plaintiff also hired him, "claims that employer animus exists in termination but not in hiring seem irrational"). Kobe had hired Kojin less than a year earlier, knowing that he was a Brazilian citizen of Russian descent. **Kobe also fired Kojin.** The "same actor" rule creates an inference that the employer's stated justification is not pretextual, providing additional support for Barton's summary judgment motion. *See Proud*, 945 F.2d at 798.

Kojin fails to raise a genuine issue of disputed fact material to determining whether Barton's stated justifications for firing him were a pretext for discrimination. Kojin's subjective belief that he was discriminated against by Barton, however genuine, cannot alone be the basis of judicial relief. *See La. Office of Cmty. Servs.*, 47 F.3d at 1448. Viewing the record in a light most favorable to Kojin, no genuine issue of material fact exists as to whether national origin discrimination was a basis for his job termination. Kojin's Title VII national origin claim cannot survive Barton's motion for summary judgment.[7]

---

on the positive review or on Kerr's complaint. The discrimination laws are not vehicles for second-guessing business decisions. *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997).

[7] Kojin's complaint additionally lists a separate Title VII cause of action based on "disparate treatment." (Docket Entry No. 1). Neither party addresses this claim as distinct from the national origin discrimination claim. "Disparate treatment" discrimination simply means that an employer treats someone less favorably than others because of one of the person's statutorily-protected traits. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977). Kojin's Title VII cause of action is properly and fully analyzed as a national origin discrimination claim.

**B.      The Section 1981 Claim**

Kojin has also alleged a violation of 42 U.S.C. § 1981, claiming that Barton violated his civil rights when it discriminated on the basis of "ancestral origin." (Docket Entry No. 1). "Ancestral origin" means "national origin." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88–89 (1973). The Civil Rights Act of 1866 guarantees that all persons have the same right to make and enforce contracts "as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2000). The Fifth Circuit does not recognize a section 1981 action based solely on national origin. *See Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. 1981); *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986).

Even if a section 1981 cause of action could be based on "ancestral origin" or "national origin," Kojin's claim would still fail. The summary judgment standard for discrimination under section 1981 is the same as that for discrimination under Title VII. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87 (1989); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002). Kojin's failure to raise a genuine issue of material fact with respect to his Title VII claim indicates that the section 1981 claim would suffer from the same flaw and similarly could not withstand summary judgment. Summary judgment is therefore appropriate on Kojin's section 1981 claim.

---

Kojin also attempts to distinguish between "national origin" and "ancestral origin" in his Title VII claim. (Docket Entry Nos. 1, 30). However, legislative history suggests that the two terms are synonymous. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88–89 (1973). "National origin" refers to the country where a person was born, or to the country from which his or her ancestors came. *Id.* at 87. The suggestion that Barton's motion addresses only Kojin's "national origin" claim and not to his "ancestral origin" claim is not a basis for denying summary judgment.

## IV. Conclusion

This court grants Barton's motion for summary judgment. Final judgment is entered by separate order.

SIGNED on June 13, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge